First case on the docket today is cause number 17-10826, Gregory Dean Bannister v. Bobby Lumpkin. Is it Ms. Pellegale who's on the phone? You're the one who's here. Who do we have on the phone? Casey Solomon? Yes, Your Honor. Are you able to hear us, Ms. Solomon? I am. Thank you so much. Ms. Solomon isn't here because of a canceled flight. So we're going to do this by phone. I'll remind everyone to please keep your voices up. And now you can correct me on the pronunciation of your name. So if both sides are ready, then the appellant may proceed. Pellegale? Pellegale? Mr. Solomon? Solomon's right. All right. May be the last time today, but we'll see. You may proceed. May it please the court. Good morning, Your Honors, my name is Kelsey Pellegale. Counsel for Petitioner Appellant Gregory Dean Bannister. I'd like to reserve five minutes for a rebuttal. You need to speak up. This is a case about a prisoner's right to the effective assistance of counsel. This court should find in favor of the appellant for the four main reasons as outlined in our briefing. But unless the court directs otherwise, I'd like to focus on two of those reasons today. First, Mr. Bannister's trial counsel was ineffective when she failed to move to strike the state's conditionally admitted expert testimony concerning the cocaine crash phenomenon when the condition for its relevance had not been established. Second, Mr. Bannister's trial counsel was ineffective in failing to object to a jury instruction that improperly informed the jurors of the fact of Mr. Bannister's prior conviction. As I'll explain in more detail, it's important that neither of these failures on behalf of counsel can be characterized as mere strategic misjudgments. Rather, in each instance, she failed to take action at the critical time in trial, and these failures were to Mr. Bannister's detriment, allowing prejudicial information or evidence to be considered by the jury despite meritorious grounds to object. First, with respect to the conditionally admitted testimony, Mr. Bannister's counsel recognized that it wasn't relevant unless tied to Mr. Bannister, but then at the critical time at the close of evidence, failed to move to strike. This failure was deficient performance. As the director tells the events, they attempt to portray that the evidence was not in fact conditionally admitted, but this is simply incorrect. Before Ms. Irwin was called in front of the jurors, there was a pretrial hearing. At that hearing, she gave general background testimony about her knowledge, experience, and then she got into more of the substance of her opinions in which she described the analysis of Mr. Bannister's blood showing an inactive metabolite that was a byproduct of the body's processing of cocaine, and then she described generally the symptoms of cocaine crash by which some individual users of cocaine may experience symptoms of fatigue and extreme sleepiness following the high effect. Critically, after Mr. Bannister's counsel asked questions about the basis for Ms. Irwin's cocaine crash phenomenon, she elucidated testimony that the studies were all done on chronic users of cocaine, those who had been using it frequently, habitually, and were hospitalized or otherwise seeking treatment. At that point, she objected that it was irrelevant, and the court agreed, ruling that that testimony would not be admissible unless Ms. Irwin could establish some way from the test of Mr. Bannister's blood, which only showed an inactive metabolite, that he would be suffering from the crash effect. Subsequently, Ms. Irwin was called in front of the jury. She gave the same general background... You said what now? I missed. You said subsequent what? Ms. Irwin was called in front of the jury, and at that point, she gave the exact same testimony on the background information, and as she was about to go into her opinion on the cocaine crash phenomenon, trial counsel objected again. The court overruled the objection and allowed the testimony to proceed on the understanding on the condition that its relevance would be established. It was not. At no point was Ms. Irwin able to establish that Mr. Bannister would have been suffering from the cocaine crash theory because she could not... What's the purpose for the state in producing this testimony, to show that your client was more likely than not to fall asleep? The purpose, Your Honor, was to show that our client caused the car accident as the result of the introduction of cocaine into his body by failing to drive the car without sufficient sleep, by recklessly losing control or falling asleep at the wheel. Right. So it's more likely, because of the cocaine background, sorry, the cocaine use, more likely to fall asleep at the wheel. It was an element of the offense, Your Honor, so the state has to prove it by beyond a reasonable doubt. It was in the indictment, they alleged in the indictment that Mr. Bannister caused the accident as a result of that prior cocaine use, and they offered Ms. Irwin's testimony... So the state was required to prove that the cocaine use caused him to fall asleep and ultimately to hit the cyclist. Yes, Your Honor, that it caused the accident because he was sleeping, not necessarily 100% asleep. But as a result, and to do so, they offered this cocaine crash theory by which the state alleged that users of cocaine, after the high effect, suffer extreme periods of... I'm sorry, what are the elements? This is aggravated assault under Texas law with a deadly weapon. Yes, Your Honor. As you... What's the element that you're alluding to? In the indictment, the state alleged that the accident occurred as a result of the introduction of cocaine into his body. And the state... Oh, I see. You're basing it on the indictment. Yes, Your Honor. And in arguing, again, in that language on the indictment, the state agreed that it was going to prove that that is why the accident occurred. But your complaint now is that trial counsel should have objected again? Yes, Your Honor. Under Texas law... How many objections did trial counsel make in connection with this testimony? She made several, Your Honor, but the key point is not how many she made, but when she made them. Each time that she objected, it was before that objection became ripe under Texas law on conditionally admitted evidence by which the court may admit... It was more than three. Yes, Your Honor. Yes, Your Honor. That she objected to this testimony. Yes, Your Honor, but she never objected at the close of the case when it was clear that the relevance hadn't been established. At the time that she objected to the testimony, the state still had an opportunity to prove that Mr. Bannister would have been suffering from the cocaine crash effect. The cocaine crash testimony established that chronic users of cocaine or individuals who use a sufficiently high dose of cocaine may suffer from this period of extreme fatigue. The state simply failed to show that Mr. Bannister would have fallen into either category and therefore failed to show that he would have been suffering from the cocaine crash effect, making Ms. Irwin's testimony on this matter irrelevant and untethered to the facts of this case. At that point... Was it... Am I correct that the main objection regarding trial counsel was the failure to object to the state's expert? It's... Your Honor, it's failure to move to strike the state's expert at the close of evidence. She objected previously, but she objected at the time when those objections were premature. Under Texas law, she was required to re-urge those prior relevancy objections at the close of the state's case when it was clear that the relevance had not been established. At the time she objected and at the time the court admitted the evidence, the state still had ample opportunity to introduce evidence, if it had any, showing that Mr. Bannister would have been suffering from... So Texas law required her to re-urge the objection? Yes, Your Honor. What law are we talking about? We're talking about Texas law on conditionally admitted evidence, Texas rule of evidence 104B and the Texas law interpreting it, such as Fuller v. State and Rollins v. State, both of which are cited in our briefing.  I'm going to take this evidence that the expert testimony out of the equation, hypothetically. Wasn't there ample late witness testimony, both that your client took cocaine and that your client was, in fact, asleep at the time of the accident? No, Your Honor. There was evidence... Taking the expert's testimony off the table, there was evidence from one witness of the state that Mr. Bannister allegedly admitted to using cocaine the day before... There was also a blood sample, I thought. Yes, Your Honor. Okay, so you've got blood sample evidence that he took cocaine, and as I understand it, there are plenty of witnesses, at least multiple witnesses, who testified that he fell asleep, as well as a witness who testified that he didn't swerve, despite the fact that there was a bicycle, which suggests that he was asleep. Yes, Your Honor. Why is that? If we have evidence that he took cocaine, evidence that he was asleep at the time, why is that not enough? Your Honor, because the state alleged that he caused the accident as the result of that cocaine use. Just the fact from the blood that showed he'd used cocaine at some prior time, an unknown prior time, and that he allegedly admitted to using cocaine the day before the accident is insufficient to prove that the accident was a result of that cocaine use. That is why the state offered the expert testimony on this cocaine crash phenomenon that's out... Your theory is that without the expert testimony as to causation, that the conviction would be legally insufficient, factually insufficient? Yes, Your Honor, because there was no... What's your best case for that? I'm sorry? What's your best authority for that proposition? That the evidence was factually insufficient, I believe... That with a charge like this, it's not enough to prove the cocaine use and the falling asleep. You have to prove that the cocaine use caused the falling asleep. What's your best case for that? I believe, Your Honor, that we don't have a case that directly states that that's on point because it's based on the facts of this record and the evidence that was produced in the factual record. It shows that it was insufficient to connect that evidence to the state's theory, and the state had agreed that they would put forth that evidence, and they were unable to. They were unable to connect that evidence to Mr. Bannister throughout the trial, so a Texas law required Mr. Bannister's counsel to move to strike that expert testimony that was the linchpin to their cocaine crash theory at the close of evidence when it was clear that the relevance hadn't been established. Second, Mr. Bannister's trial counsel was also ineffective in failing to object to a jury instruction that improperly informed the jurors of the fact of Mr. Bannister's prior conviction, when, in fact, no evidence of that conviction had been put forth in front of the jury, and the charge instructed the jurors to use it for impeachment purposes only when Mr. Bannister had chosen not to testify. That charge was read to the jury directly before deliberations began, and before deliberations began, trial counsel was given the opportunity to object to the jury charge. She did not object to the introduction of the charge instructing the jurors that evidence of Mr. Bannister's prior convictions had been admitted and that they should be used to impeachment purposes when it was facially inapplicable. As I stated, no evidence of that conviction was before the jury, and Mr. Bannister chose not to testify. Her failure to do so prejudiced Mr. Bannister, as directly before deliberations began, the jurors were informed by the judge himself that Mr. Bannister, the evidence of Mr. Bannister having been charged in conviction of multiple offenses went before them when it wasn't. But prior to the trial, Mr. Bannister's counsel recognized the inherent prejudice that would result from the jurors' learning of his prior conviction and moved to preclude the state from offering such evidence. The court agreed, granting Ms. Irwin's motion to preclude that evidence from coming in. The court also ruled that if Mr. Bannister chose to testify and that the state then sought to introduce his prior conviction for impeachment purposes, there would be a hearing held immediately to determine whether the prejudice outweighed the benefit of that information, and based on the court's ruling and the risk of the jurors' hearing of the fact of Mr. Bannister's prior conviction, he chose not to testify. In the end, when counsel failed to object to that jury charge that nonetheless informed the jurors of the fact of his prior conviction, it was all for nothing. She failed to act at the critical time, and her earlier efforts were for nothing, and specifically to prevent evidence from being admitted when the jurors learned of the fact of his prior conviction, nonetheless. If the court has no further questions, I'll save the room for counsel. Do you want to go into why appellate counsel? I'm sorry, Your Honor? Would you reiterate your point of why appellate counsel was insufficient? Yes, Your Honor. Appellate counsel was ineffective in failing to raise sufficiency challenges and evidence, and his failure to do so was deficient because he chose the grounds that he raised on appeal and for both sufficiency challenges based on a misunderstanding of the record. Specifically, he misunderstood Ms. Irwin's cocaine crash theory and the state's theory around her testimony, and failed to bring challenges that the evidence was insufficient to allow a rational juror to conclude that Mr. Bannister was suffering from the cocaine crash at the time of the accident. As we discussed before, that was because the evidence could lead a rational juror to believe that two categories of individuals would have been suffering from a cocaine crash. One, chronic users, and two, someone who'd used a sufficiently high dose of cocaine. No evidence established that Mr. Bannister was in either category. The evidence established that he had used an unknown quantity of cocaine on some unknown prior occasion, and that he allegedly admitted to using cocaine the night before, but without any evidence indicating that Mr. Bannister was a chronic user or that he had used a sufficiently high dose of cocaine . . . But all the things you complain about, that witness was cross-examined by defense counsel. Isn't that correct? Defense counsel did cross-examine Ms. Irwin, but she only established that Mr. Bannister would not have been suffering the effects of cocaine itself, the high from the drug at the time of the accident, not that she could not sufficiently tie the facts of the evidence to Mr. Bannister in front of the jury. In the pretrial hearing, she did go into the basis more of her opinion, which is when it was established that her opinion was based on studies of chronic cocaine users, but in front of the jury, when she cross-examined Mr. Bannister, it was simply to establish that he would not have been suffering from the high effects of the cocaine at the time of the accident. I see that I'm running out of time, Your Honors. If I may briefly conclude on the appellate counsel point . . . You may. His failure to present the sufficiency challenges prejudiced Mr. Bannister because he chose weakly . . . I'm sorry, you speak a little louder. His failure to present . . . her failure to present the sufficiency challenges prejudiced Mr. Bannister because he failed to raise challenges that were meritorious based on the reading of the record, and instead chose weak, insufficient challenges that were based on testimony that Ms. Irwin didn't give, which the appellate court rightly rejected. Thank you. Thank you, counsel. Ms. Solomon? May it please the Court? You may proceed. What trial counsel was up against in this case was damning eyewitness testimony of erratic driving that resulted in a tragic death, unfavorable accident reconstruction evidence putting Mr. Bannister's vehicle some eight feet outside the normal lane of travel when he struck and killed the victim, testimony that it was not particularly windy that morning, a cocaine metabolite found in Mr. Bannister's blood at the time of the offense, and a client who In the face of this, counsel put forth a vigorous defense. Particularly given the deference required under Strickland and AEDPA, Mr. Bannister's claims now are unsuccessful. I'll turn first, as opposing counsel did, to the allegation that trial counsel was ineffective for failing to sufficiently object to the cocaine crash expert's testimony. This claim fails simply because trial counsel adequately preserved error on appeal. This is a critical distinction from the case that Mr. Bannister relies upon, Fuller v. State. Unlike in Fuller, counsel here objected when the trial court unconditionally admitted the testimony. Our characterization of the record is different. We believe that after making at least three prior objections, the final objection that trial counsel made was made at the point when the trial court unconditionally admitted the evidence. This is clear because this claim was a related claim challenging the relevance of this evidence was raised on direct appeal, was considered on the merits, and was overruled. Unlike in Fuller, where trial counsel's objection failed to properly preserve error on appeal. So, Your Honor, in our view, the critical distinction between Fuller is that trial counsel did exactly what she needed to do as a matter of Texas law to preserve this error for appeal. It was considered on appeal, and it was overruled. Turning then to Mr. Bannister's claim that trial counsel failed to object to the jury charge. Critically, Your Honors, the jury is presumed to properly follow its oath and its instructions. In this case, the jury heard no evidence of prior convictions. The jury was also instructed to consider evidence of prior convictions only to pass upon the witness at trial. Of course, Mr. Bannister did not testify, and the jury was also specifically instructed not to consider the defendant's decision not to testify as weighing against him in any way. The jury was instructed not to refer to or to discuss any matter or issue not in evidence, and instructed not to consider the remarks, rulings, or actions of the judge. Ms. Solomon, you'll agree that that instruction should not have been given? Yes, Your Honor, I agree. The instruction was improper. It should not have been given. Had trial counsel objected and we assume a lawful decision maker, the objection would have been sustained. Yes, Your Honor. The instruction referred to a prior conviction. Yes, it referred to prior convictions. There had been no testimony about a prior conviction. That's correct, Your Honor. There was no testimony about a prior conviction. And so did the jury ask any question or express any evidence that they were confused or didn't understand? None of that happened? No, Your Honor. In fact, there were two other jury notes during delivery. While we are to presume that the jurors followed their instructions, aren't you asking us to presume that they ignored that one? Your Honor, given the jury instructions on the whole, this particular instruction, while perhaps frustrating and certainly misplaced, could not possibly be prejudicially applied. So, two things. First, of course, what we're reviewing now is the reasonableness of the state court's decision that this did not result in Strickland prejudice. It's reasonable to believe that in light of the jury instructions on the whole, the jury did not prejudicially apply this instruction. In other words, this instruction was largely self-correcting. It may have been frustrating for the jury. It may have been confusing for the jury. It may also have been that the jury viewed it as a clerical error and paid not much mind to it at all, particularly in light of the record evidence that the jury did ask questions during deliberations, but not about this. Assuming that the jury followed its oath, followed its instructions, there was no way for the jury to consider evidence of prior convictions when the jury heard no evidence of prior convictions. But isn't there a concern that the jury thought that it did hear evidence, namely through the judge? Your Honor... This instruction is essentially tantamount to the judge telling the jury there was a prior conviction, but to ignore it. Your Honor, again, first, what we're reviewing, of course, is the reasonableness of the CCA's decision that this instruction did not result in a reasonable probability of a different outcome. Did not... A reasonable probability that this affected the outcome of trial. So, certainly, there is still a critical distinction between the actual admission of evidence of prior convictions, which is what happened in all of the cases that Mr. Bannister relies upon, and an incorrect, perhaps confusing instruction that the jury heard evidence of prior convictions when the jury did not hear evidence of prior convictions. Mr. Bannister still received the anticipated benefit of not testifying, which is that the jury did not hear evidence of his prior conviction, which, in fact, was for cocaine trafficking, making it all the more critical that it remain out. Had the jury heard actual evidence of that prior conviction, they would have heard, perhaps, facts of the offense, certainly the nature of the offense. In this case, the jury heard none of that, which is, again, a critical distinction. Instead, the jury heard a confusing instruction, at worst, that it was to consider evidence of prior convictions, immediately followed by language saying that this evidence should be considered only to pass upon the defendant's credibility as a witness at trial, and then also followed by language that the defendant had not testified at trial and that that should not be held against him in any way, and also language that the jury was not to consider the remarks, rulings, or actions of the presiding judge. So, even if this instruction is considered a remark of the judge, the jury was instructed not to consider facts outside of evidence and not to consider remarks of the judge. An argument could be made that defendant was sort of worse off this way because the negative inference of a conviction came into evidence, but he didn't get to say anything else in his own defense. I take it your position is the situation is admittedly confusing, but not unreasonable for AEDPA purposes? Yes, I think that's right, Your Honor, that it was reasonable for the CCA to determine that this instruction, while improper and perhaps confusing, did not necessarily impact the jury's decision to the extent such that it would constitute strickland prejudice. Would the state acknowledge, though, that this is sort of a worst-case scenario for defendant? They don't get to testify, but their conviction comes in. Again, the jury is told to ignore it, but the conviction is now part of what the jury has heard, and yet nothing good from the defendant. Well, Your Honor, his conviction did not come in. Only language in the jury instruction stating that they heard evidence of a prior conviction. But the jury did not hear evidence of a prior conviction. The jury was not aware at guilt and incident's delivery of a prior cocaine trafficking conviction. The problem is the court told them that they heard it. Maybe you have twelve people sitting there saying, well, maybe I missed that, but surely it came in. Because over the course of a trial, I dare say for all twelve of them, they missed something. And so now you're sitting there saying, well, maybe these other people heard it, but I guess I must have missed it. And so maybe nobody brings it up in the deliberation room because they don't want to be the one who admits they didn't hear it when everyone else did. It's very problematic. You agree with that? I agree that the instruction is problematic, that it absolutely should not have been there, that trial counsel should have objected and it would have been sustained. I, however, believe that it was withdrawn. I mean, it was offered up by the prosecution, isn't that correct? I mean, the court didn't draw up that instruction. Your Honor, as I read the record, the I don't know that I know the answer to how the instruction, how that particular instruction wound up in the jury. I think we can eliminate the defense offering it up. So we're down to either the court or the prosecution. Yes, Your Honor. I don't think that we have on the record exactly how the instruction came in. There was some evidence admitted at trial of a pending intoxication manslaughter charge that came in because it was based on the same conduct. So it properly came in because it was part of the same transaction and it was not entitled to a limiting instruction. It's possible that that's how this instruction inadvertently landed in the jury charge. We don't know. The state is certainly willing to concede that the instruction was improper. Again, however, it also seems reasonable for the CCA to have decided that a jury who did not hear evidence of prior convictions, simply heard a confusing but largely self-correcting jury instruction referencing prior convictions, would have, particularly in light of the record, which indicates that this was an active jury asking questions, would have more likely been able to follow its oath and its instructions on the whole and not consider that misplaced instruction. Or in other words, not consider evidence that didn't exist, that wasn't admitted. It was reasonable for the CCA to decide that that's what the jury did. Even if you or I might disagree, even if it might be reasonable to find that the jury was prejudiced by that instruction, so long as a reasonable jurist could agree with the CCA that in this case, the jury instructions on a whole were self-correcting enough that the instruction alone, without any evidence whatsoever of prior convictions, there was not a reasonable probability that that affected the outcome of trial. So long as any reasonable jurist could agree with the CCA, this court has to uphold the decision under AEDPA. Turning quickly, Your Honor, to Mr. Bannister's claim that trial counsel failed to properly develop a wind defense. This claim can't survive Mr. Bannister's own failure to suggest, let alone prove, what admissible, relevant, favorable evidence trial counsel could have relied upon. Of course, the only evidence Mr. Bannister's ever provided is the same inadmissible weather report that was offered at trial and his own state habeas assertion that he told trial counsel it was windy. The reasons that trial counsel didn't take this approach, a wind defense approach, may well have been the same reasons that Mr. Bannister himself hasn't, in the years of subsequent litigation, provided any evidence that it would have been successful. A wind defense would be hard, if not impossible, to advance. It's likely that the accident reconstructionist's testimony would have accounted for weather conditions or whatever conditions resulted in the bike and the car colliding at the place that they did, which was some 8 to 10 feet outside of Mr. Bannister's normal lane of travel. Finally, with regard to Mr. Bannister's ineffective assistance of appellate counsel claims, ultimately, Your Honors, Mr. Bannister's own statement to Officer Wilson regarding his prior cocaine use, alongside evidence of a cocaine metabolite in his blood, really rendered sufficiency challenges meritless. So, what appellate counsel did was raise the stronger related claims. Appellate counsel challenged the admission of Officer Wilson's testimony regarding Bannister's statement on four different grounds and challenged the admission of the cocaine crash expert's testimony on three separate grounds. Had the appellate court found Mr. Bannister's favor on any of those claims, such an analysis would necessarily have involved a prejudice analysis more favorable to Mr. Bannister than the one that would have been conducted on a general sufficiency review. So, unless appellate counsel is unable to do exactly what we expect appellate attorneys to do, which is to select the stronger claims and raise only those claims, then Mr. Bannister's appellate counsel cannot possibly have been ineffective. Unless the court has further questions, I'll conclude by saying that unless no reasonable jurist could agree with the state court that Mr. Bannister failed to establish prejudice under Strickland, which is a reasonable probability that the outcome of trial would have been different, the district court's denial of relief must be affirmed. Thank you. Thank you, counsel. Rebuttal. I'd like to make a few quick points on rebuttal.  First, there is no basis in the record to conclude that the court had finally or unconditionally admitted that testimony. The testimony that the court heard in the pre-trial hearing that led it to conclude that additional foundation needed to be laid was no different than what the court heard before he overruled counsel's objection in front of the jury. So, there's no basis to conclude that was a final, unconditional admission of that evidence. And second, trial counsel's failure to move to strike did not preserve that error for appeal. Under Fuller and Rawlins, trial counsel was required to re-urge those relevancy objections at the close of the state's case in order to preserve it for appellate counsel. She did not. With respect to appellate counsel, appellate counsel did fail in his duty to identify the stronger challenges in favor of the weak. As the director has stated, appellate counsel did raise three challenges to the admission of Ms. Irwin's cocaine crash testimony, but unfortunately all three were based on a misunderstanding of the record. He raised challenges to the fact that the evidence didn't establish that Mr. Bannister was suffering from cocaine, the high effects of cocaine at the time of the accident, which the testimony was never offered to prove. And then he challenged the application of Ms. Irwin's cocaine crash testimony to Mr. Bannister. And she never applied that testimony to Mr. Bannister. As the appellate court recognized in rejecting these claims, his challenges were to testimony that Ms. Irwin didn't give. She was never asked whether Mr. Bannister would be suffering from the cocaine crash effect in front of the jury. And in fact, she had no basis for saying that he would have been. Finally, with respect to the jury instruction, clearly as the director has conceded, it was improper. However, it was also highly prejudicial and it's unreasonable for the state court to have concluded otherwise. Mr. Bannister chose not to testify in his own defense in a highly circumstantial case about the cause of a car accident in order to prevent the jury from hearing that he had a prior conviction. Nonetheless, the jury— What would—let's say he had testified. How would that have affected the outcome? I'm sorry? Let's just stipulate that he—I grant your point that he sort of had the worst case scenario. He didn't get to testify and yet the evidence came in of the conviction, or at least sort of came in. How are we to be convinced that his testimony was an important part of—I mean, at the end of the day, he chose not to testify. Yes, Your Honor. What could he have testified to that would have vindicated him at trial? Your Honor, he could have given direct evidence of his mental state at the time of the accident and what caused the crash. Contradicting the state's theory that he was suffering from extreme fatigue from cocaine use, he could have clarified how he was feeling and what, in fact, happened. But there are witnesses saying he was, in fact, asleep. I'm sorry? There were witnesses saying that he was, in fact, asleep. Am I mistaken about that? I'm not aware, Your Honor, of any witness saying that he was, in fact, asleep. Mr. Bann—the passenger in Mr. Bannister's car was asleep at the time of the accident and couldn't say exactly what happened. And there were other witnesses who testified to what it looked like from the outside, but there was no evidence to my knowledge of Mr. Bannister, in fact, being asleep. And that is something that Mr. Bannister's testimony could have addressed. But instead, he chose not to testify in order to prevent his prior conviction from coming in. And the state—I'm sorry, and trial counsel failed to object, allowing the judge to inform the jurors that evidence of convictions had, in fact, come in. That instruction was confusing and it was cryptically given and, in fact, referenced multiple prior convictions, plural, when Mr. Bannister, in fact, only had one prior conviction, inviting the jurors to speculate how many times he had been convicted, for what, possibly inflating their sense—their understanding of his criminal history and prejudicing his defense in that regard. So for the foregoing— And that instruction was submitted by the prosecution? I'm sorry, Your Honor? That instruction was submitted by the prosecution. I agree with the Director, Your Honor, that it's not clear to me how that instruction came into the record. But the state court's decision to the contrary, that Mr. Bannister was not prejudiced by these repeated errors that allowed inadmissible evidence and prejudicial facts to be considered by the juror and failed to raise stronger claims on appeal, is an unreasonable application of Strickland. Thank you. The court will take this matter under advisement. You are excused, and we will call now the next case of the day, which is cause number 21-20264, Heritage v. Montgomery County.